## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELO WILLIAMS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    **OPINION** |
| | :    Civ. No. 05-0086 **(WHW)** |
| JO ANNE B. BARNHART | : |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| | : |
| Defendant. | : |
| | : |

**Walls, Senior District Judge**

Plaintiff Angelo Williams seeks review of the final determination of the Commissioner of

Social Security ("Commissioner") denying his claim for disability insurance benefits and

supplemental security income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  This

Court will affirm the Administrative Law Judge's ("ALJ") decision to deny benefits.

## BACKGROUND

I.    **PROCEDURAL HISTORY**

Plaintiff filed concurrent applications[1] for disability insurance and SSI on August 15,

2001. (R. 167-194.)[2]  The current application was denied both initially and upon reconsideration.

(R. 113.)  Plaintiff was granted a hearing by ALJ Michael H. Noorigan.  The ALJ determined that

---

[1]    Plaintiff twice before filed for concurrent benefits on August 28, 1997 and on
December 20, 2000.  Both applications were denied without appeal.

[2]    References to the official administrative record filed with the court on February
11, 2005, will hereinafter be referred by the following citation (R. #.), where #
represents the page number at the administrative record.

1

the plaintiff, who had not worked since March 29, 2001, was not under a "severe" impairment

and that he had the residual functional capacity to perform his past relevant work.  (R. 105-08.)

Plaintiff appealed the ALJ's decision, and the Appeals Council vacated and remanded to the ALJ

for three reasons: (1) the ALJ's opinion did not contain an appropriate evaluation of the State

medical consultant's opinion that plaintiff should avoid certain physical activities due to his

limited depth perception (See R. 210-15); (2) the ALJ failed to make a function-by-function

analysis regarding the plaintiff's ability to do past relevant work as required by 20 C.F.R. §§

416.1545; 416.945; and (3) the decision did not refer to the claimant's residual functional

capacity as it is generally performed in the national economy.  (R. 136.)  On remand, the ALJ

took additional testimony from plaintiff and a vocational expert ("VE").  In a second opinion, the

ALJ reaffirmed his initial finding that plaintiff maintained the residual functional capacity to

perform his past relevant work.  Alternatively, relying on the testimony of the VE, the ALJ found

that there are significant numbers of jobs available in the regional and national economy which

plaintiff could perform.[3]  The Appeals Council affirmed this decision without review.  The

plaintiff then filed this timely appeal pursuant to 42 U.S.C. § 405(g).

## II.    FACTUAL BACKGROUND

    A.    Plaintiff's Testimony

    Plaintiff claims to have lost the ability to see out of his left eye.  Precisely how is

disputed.  In his initial opinion, the ALJ claimed that plaintiff lost his vision while boxing.  (R.

106.)  However, during the second hearing, plaintiff testified that he injured his eye in a car

---

[3]       For a detailed discussion of the VE's testimony, see infra, Background Section
         II.D.

2

wreck.  (R. 67.)  Plaintiff testified at both hearings that his eyesight has remained consistently

bad since some time in 1984 or 1985.  (R. 26.)[4]  Contradicting this statement is plaintiff's

testimony that the vision in both his left and right eyes has been steadily getting worse over the

years.  (R. 32.)  The ALJ, citing medical evidence,[5] concluded that plaintiff's eyesight in both

eyes has remained steadily bad since 1985.  At the first hearing, plaintiff also claimed difficulty

with the vision in his right eye, including blurriness and the appearance of black spots after

focusing for some time. (R. 30.)  This testimony was never corroborated by medical evidence.

At the second hearing, plaintiff also claimed that he experienced lower back pain and headaches.

Plaintiff claimed that the back pain was intermittent and generally occurred every fifteen to

twenty minutes, although he was unclear as to what caused the pain. (R. 65.)  As example, when

questioned on this point he responded: "If I sit down I walk – like if I walk about an hour about

an inch like a block, a mile like a block [sic.]" Id.  The plaintiff's lack of specificity, coupled by a

lack of supporting medical evidence[6] led the ALJ to conclude that the pain was not indicative of

an underlying disability.  Plaintiff also claimed that he has severe headaches every hour which he

treats by resting.  Plaintiff does not take aspirin or any other over the counter medications

because he "doesn't like aspirin." (R. 69.)  He has not sought any other medical help for these

---

[4]      At various points, plaintiff alleges different on-set dates.  In one application he
claims that the condition began to bother him on June 15, 1984 but that it only
stopped him from working on July 31, 2000.  (R. 148.)   In a prior application he
claimed that he became disabled "sometime in 1989." (R. 234.) The ALJ attached
no significance to these inconsistencies and determined that plaintiff's condition
was unchanged since 1985.

[5]      See, infra, Background Section II.C

[6]      One doctor did report that plaintiff suffered back pain and headaches, (R. 223),
but the ALJ rejected this evidence. See infra, Analysis Section I.

3

symptoms.

Plaintiff does not drive but can use public transportation.  (R. 48.)  He has alternated between periods of homelessness and times when he was living with his mother.  (R. 38.)  Most recently he was homeless between 2000 and 2003.  However, he had moved back with his mother six months before the first ALJ hearing.  Plaintiff has a tenth grade education by a special education program in Jersey City, New Jersey (R. 22; 252.)

B.      Employment Background

Plaintiff was employed in three jobs.  From 1988 until 1994 plaintiff worked as a truck loader, requiring him to lift between seventy-five and eighty pounds at a time.  (R. 63-64).  From 1994 until 1999, plaintiff worked as a train-car cleaner for Amtrak, performing general janitorial services on train cars as well as loading and unloading cargo.  (R. 62.)  This job required plaintiff to lift from fifteen to twenty pounds at a time.  Id.  From early 1999 until July of 2000, plaintiff was employed by Waste Management, Inc. as a garbage lifter. This job required plaintiff to lift fifty to one-hundred pounds of garbage at a time. (R. 62-63.)   Evidence in the record suggests that plaintiff left or was terminated from his positions at Amtrak and Waste Management because of safety concerns.  With regard to the Amtrak position, plaintiff testified that he left because he and his boss were concerned that he would not be able to see oncoming trains because of his diminished peripheral vision. (R. 33.)  During his employment with Waste Management, plaintiff was injured when he jumped off a garbage truck, and because of his left-eye blindness, failed to notice an oncoming car that ran over his foot. (R. 33.)

C.      Medical Evidence.

Plaintiff has a long history of poor eyesight.  He has worn "rather thick" eyeglasses since

childhood.  (R. 255.)  After his initial loss of vision in 1984 or 1985, plaintiff underwent

unsuccessful surgery in July 1995 to correct the retinal detachment and cataract in his left eye.

(R. 247.)  After the failed surgery, plaintiff claims he frequently visited Dr. Liva in Montclair,

New Jersey, who prescribed eye drops.  (R. 235.)  Plaintiff discontinued seeing Dr. Liva because

he had no medical insurance and "had the impression he could not help. . . ." Id.

In August 1997, plaintiff visited Dr. Edgar Braunstein who reported that plaintiff had no

vision in his left eye and 20/30 vision in his right eye with correction.  (R. 255.)  Dr. Braunstein

observed:

> This patient has been blind in the left eye as a result of an accident for a number of
> years.  There is no hope of regaining vision in that eye. The right eye is basically
> healthy but has the changes associated with congenital high myopia and has a slightly
> restricted visual field because of his rather thick glasses.  He should be capable of all
> visual functions.

(R. 256.)  Dr. Braunstein also noted plaintiff's restricted peripheral vision. (R. 256-57.)

In addition, the ALJ noted in his opinion a series of medical exams that do not appear in

the present record.  These included one exam in August 1998 by Dr. Ruiz-Blenk who found

plaintiff to have no light perception in the left eye and visual acuity of 20/60 in the right eye, and

an exam in January 1999 by Dr. Gillman who found right eye acuity of 20/50.  (R. 106.)

In November 2001, plaintiff's visual acuity in his right eye was measured at 20/40+ with

correction.  (R. 203.)  On November 11, 2004 plaintiff underwent a consultative examination

with Dr. Bernard Sarn who found that plaintiff had no light perception in his left eye and saw at

20/40, corrected to 20/30.  (R. 206.)  Dr. Sarn diagnosed plaintiff with myopic degeneration and

also noted a limited peripheral visual field. (R. 206-208).

In September 2002, plaintiff sought treatment from Dr. Medhut El Amir who diagnosed

plaintiff with "lost left eye, left face swelling, migraine headach [sic] . . . [and] low back pain." (R. 223.)  Dr. El Amir was the only doctor to note plaintiff's back or head pain and opined that plaintiff was not capable of doing any work.  Id.  The ALJ rejected both Dr. El Amir's diagnoses regarding pain and his opinion with respect to plaintiff's work capabilities.  The ALJ found Dr. El Amir's diagnoses as unsupported by the totality of the evidence, including the medical opinions of Drs. Braunstein and Sarn. (R. 13.)

The ALJ obtained a residual functional capacity assessment ("RFCA") in April 2002 as part of a standard investigation into plaintiff's claim.  The assessor found that plaintiff should never perform certain physical activities including crouching and climbing and that because of his limited visual acuity, the plaintiff should avoid concentrated exposure to hazards such as height and machinery. (R. 213-14.)  The doctor found that plaintiff's symptoms are "attributable to medically determinable impairments of degenerative myopia and retinal detachment."  (R. 215.)  However, the assessor concluded that these impairments "restrict vision somewhat but still do not prevent all work related activities."  Id.  The RFCA suggested that the plaintiff would be able to continue his work as a train cleaner but the ALJ makes no reference to this assessment. (R. 219.)

  D. <u>Vocational Expert Testimony</u>

On remand, the ALJ obtained the testimony of VE Rocco Meola.  The VE testified that plaintiff's earlier employment should be classified as both heavy and unskilled and light and unskilled. (R. 78.)  Based on the 2002 RFCA, the VE concluded that plaintiff's functional limitations prevent him from "returning to any of his prior work . . . [since] each of those jobs take place in an environment where peripheral vision would be somewhat important to

6

performing the job safely." (R. 79.) In support of his conclusion, the VE cited hazards such as crossing streets, perceiving on-coming cars, and jumping on and off the back of the truck. In his second opinion the ALJ rejected the VE's testimony with respect to the plaintiff's prior work:

> We find the testimony of the vocational expert as to the inability to perform the past work as a garbage person to be not persuasive. Claimant performed this last job as a garbage person after having lost the vision in his left eye. When questioned as to why the claimant could not still perform this past work, the vocational expert said that the visual limitations posed a work hazard. That's hardly persuasive. Claimant's vision did not in the past pose a hazard. Further, claimant explained that it was his back problem that led to the end of his last job. However, no back impairment is medically determined in this record.

(R. 14.) The VE proceeded to conclude that the plaintiff's residual functional capacity would not preclude him from performing certain jobs in a fixed environment. The jobs cited by the VE included that of a scaler, assembler, packer, and produce weigher. (R. 80). The VE estimated that in the aggregate around 1,500 - 1,800 such jobs existed in the regional economy of Northern New Jersey and 35,000 jobs were available nationally. (R. 81.)

Plaintiff's attorney questioned the VE extensively. Pursuant to these questions, the VE clarified that the 1,500-1,800 jobs were in the aggregate and that there is no way to know how many individual positions for sorter, scanner, assembler and produce weigher existed. ( R. 82.) The VE made two concessions that the plaintiff focuses on in his brief. First, the VE conceded that "*if [plaintiff] can't even focus on the task at hand* then you know . . . he would not be able to do these jobs." (emphasis added) (R. 84.) Second, the VE noted that the plaintiff's peripheral vision problems may negatively impact his ability to work on an assembly line. (R. 86-88.) The ALJ found that this line of questioning "did not impeach" the VE's testimony as to the plaintiff's capacity to perform the jobs. (R. 14.) The ALJ noted that the medical evidence that plaintiff's

attorney relied on during the questioning to form hypotheticals was incomplete and contradicted in the record and thus the VE could not have responded meaningfully to these questions.  Id.

## STANDARD OF REVIEW AND LEGAL BACKGROUND

## I.     STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The district court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. § 405(g); Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court is not "empowered to weigh the evidence or substitute its conclusion for those of fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In considering whether there is substantial evidence to support the Commissioner's decision, the reviewing court must examine: "(1) objective medical facts; (2) diagnoses and expert opinions of treating and examining physicians; (3) subjective evidence of pain; and (4) the claimant's educational background, work history and age."  Snee v. Sec'y. of Health & Human Servs., 660 F. Supp. 736, 738 (D.N.J. 1987) (quoting Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972)).  Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different

conclusion.  See Blalock, 483 F.2d at 775.

## II.   STANDARD FOR THE COMMISSIONER'S DETERMINATION OF DISABILITY

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); See also Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  The Social Security Act (the "Act") provides that:

> [an individual] shall be determined to be under disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).

"In accordance with authority granted under 42 U.S.C. § 405(a), the Commissioner has promulgated the regulations applied by the ALJ to give effect to, and further define the provisions of the Act."  Knepp, 204 F.3d at 83.  The regulations provide for a five-step evaluation of an individual's claim for disability and supplemental security income benefits.  See Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see also Knepp, 204 F.3d at 83; Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431-32 (3d Cir. 1999).

At step one, the ALJ must determine whether the claimant currently engages in substantial gainful activity. 20 C.F.R. §§  404.1520(a); 407.1572; 416.972.  If the claimant is not engaged in substantial gainful activity, the claim analysis proceeds to step two.

At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c); 416.920(c); see also Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982).  The burden is on the claimant to prove that his impairments are sufficiently severe to satisfy the standard.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At step three, the ALJ must determine "whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141.  "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."  Id.; see also 20 C.F.R. §§ 404.1520(d); 414.920(d).  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five, where the ALJ "must determine whether the claimant retains the ability to perform either his former work or some less demanding employment."  Heckler v. Campbell, 461 U.S. 458, 460 (1983).

At step four, the claimant must establish that he or she lacks the "residual functional capacity" to return to his or her former work.  20 C.F.R. §§ 404.1520(e); SSR 96-8P, 1996 WL 374184 (S.S.A.); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  "Residual functional capacity" is defined as what the claimant "can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  An ALJ must evaluate the physical and mental requirements of the claimant's past work experience to determine residual functional capacity.  See 20 C.F.R. § 404.1520(e); see also Knepp 204 F.3d at 82.  If the claimant can meet his or her past work demands, then he or she is not disabled within the meaning of the Act.  See Yuckert,

482 U.S. at 141.

At step five, the Commissioner must show that the claimant, given his or her age, education, and work experience, has the capacity to perform specific jobs that exist in significant numbers in the national economy.  See 20 C.F.R. §§ 404.1520(f); 416.920(f).  The Commissioner may rely on medical-vocational guidelines, commonly known as "grids," such as those contained in 20 C.F.R. Subpart P, Appendix 2, for purposes of establishing whether a sufficient number of jobs exist for a person with claimant's diminished capacity.  See Heckler 461 U.S. at 460.  These grids, however, may only be applied in cases of exertional activities. Sykes v. Apfel, 228 F.3d 259, 267 (3d Cir. 2000).  In cases of non-exertional activity, the ALJ must make reference to some other evidence, including that of a vocational expert.  Id. at 273.

Overall plaintiff bears the burden of proof for the first four steps of the analysis, and the Commissioner bears the burden for the fifth step.  See Doak, 790 F.2d at 28; Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

## ANALYSIS

Plaintiff makes three distinct arguments on appeal.[7]  Plaintiff first claims that the ALJ's failure to give serious consideration to his subjective complaints of pain should lead to a reversal. (Pl's Br. 12-16.)  Second, plaintiff argues that the ALJ erred in finding that he retained the residual functional capacity to perform past work because such finding was not supported by substantial evidence.  Third, plaintiff mounts a two pronged challenge to the ALJ's step five analysis, arguing that the ALJ erred (1) in finding that the plaintiff, given his age, education, and work experience, has the capacity to perform specific jobs that exist in the national economy, and

---

[7]     Plaintiff does not challenge any of the ALJ's findings in steps one through three. As such, this Court will not address these issues.

11

(2) that in fact there are a significant number of such jobs.[8]

For the reasons below, the Court rejects plaintiff's first and third argument and finds that the ALJ's findings of pain were supported by substantial evidence and that the ALJ's step five analysis was supported by substantial evidence.  The Court finds that the ALJ erred in finding that the plaintiff retained the residual functional capacity to perform past work because this finding was not supported by substantial evidence.  However, since the ALJ properly found against the plaintiff in step five, any error in his step four analysis is harmless.  Dynko v. Barnhart, No. 03-3222, 2004 U.S. Dist LEXIS 23301(E.D. Pa. 2004)[9]; see also McGonical v. Barnhart, No. 03-6530, 2004 U.S. Dist LEXIS 21496 at *17 (E.D. Pa. 2004) ("[T]he Third Circuit *has* applied the "harmless error doctrine" to Social Security disputes concerning sequential evaluations") (emphasis in original)(citing Matullo v. Bowen, 926 F.2d 240 (3d Cir. 1990)); accord Brubaker v. Barnhart, No. 05-76, 2005 U.S. Dist LEXIS 36790 (E.D. Pa. 2005)(holding an error in the step five analysis to be moot because the step four analysis was

---

[8]     Plaintiff groups the second and third argument in one section, titled "The ALJ mishandled the vocational expert's testimony" (Pl.'s Br at 16.)  In this section plaintiff claims that it was erroneous for the ALJ to reject the VE's testimony with respect to step four, and then in the next sentence accept such testimony with respect to step five.  In doing so the plaintiff challenges both the ALJ's step four and five analyses. (Id. at 21.) The court will address each of these arguments separately.

[9]     Dynko presents a procedural issue strikingly similar to this case. In Dynko, the ALJ, after reversal and remand by the Appeals Council, issued alternative holdings in a second opinion determining that (1) plaintiff retained the functional capacity to continue with her prior work, partially rejecting the VE's testimony, id. 2004 U.S. Dist LEXIS 23301 at *12-13, or alternatively that (2) plaintiff maintained the functional capacity to work in a job "that consist[ed] of simple, repetitive tasks." Id. at *7.  On appeal the Dynko court held that the ALJ had erred in its step four analysis but "because the ALJ found that step five provided an alternative basis for his decision, this court will not reverse or remand the ALJ's decision because of the problematic step four denial." Id. at *15.

correct).  As such the ALJ's findings will be affirmed based on his step five analysis and

plaintiff's appeal will be dismissed.

I.      **PAIN FINDINGS AT STEP FOUR**

Where a social security claimant testifies as to subjective pain, and the pain *"is*

*reasonably supported by medical evidence*, the ALJ may not discount claimant's pain without

contrary medical evidence." Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (emphasis

added).  In assessing subjective evidence of pain, the ALJ follows two steps.  First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment . . .  that could reasonably be expected to produce the individual's pain or other

symptoms."  SSR 96-7P, 1996 WL 375186 (S.S.A. 1996), at *2.  Only if the ALJ finds evidence

of an underlying medically determinable physical or mental impairment, must he then proceed to

determine whether the intensity of the symptoms limits the individual's ability to do basic work

activities. Id; see also 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we

consider all your symptoms, including pain, and the extent to which your symptoms can

reasonably be accepted as consistent with the objective medical evidence. . . .").  Plaintiff's

argument turns on whether the ALJ's finding that there is no medically determinable physical or

mental impairment that could have caused such pain, is founded on substantial evidence.  42

U.S.C. § 405(g); Stunkard, 841 F.2d 57 (3d Cir. 1988).  Only if answered in the negative, must

the Court then look at the ALJ's credibility determination and possibly remand for a

determination of the extent to which the pain would limit the plaintiff's work activities.  See SSR

96-7P, 1996 WL 374186 at *2.

In this case, the ALJ reasoned that the medical evidence "establishes that claimant has no

light perception in his left eye as his only severe impairment." (R. 13.) In so finding, the ALJ

discounted the medical opinion of Dr. El Amir. (See Exhibit 6F at R. 223). Dr. El Amir had

reported that plaintiff suffered from lower back pain but the ALJ rejected this noting that "here

there is no medically determined back impairment – so too for the doctor's statement of migraine

headaches." (R. 13.) While the ALJ does not specifically detail his reasons for this

determination, the record indicates that Dr. El Amir makes no specific diagnosis of an underlying

condition which could cause such pain. Under "primary diagnosis," Dr. El Amir reports "left

eye, lost eye left face swelling, migraine headach [sic] - low back pain." (R. 223). At most Dr. El

Amir's report appears to be a recording of the symptoms plaintiff claimed to suffer. The ALJ

concluded that absent further evidence – and since plaintiff bears the burden of production in step

four and "claimant has had years in which to submit further evidence from this doctor" –

plaintiff failed to prove symptoms of pain which could have been caused by some underlying

medically recognized impairment. (R.13.)

While the claimant bears the burden of production in step four, the ALJ must at least hear

and consider pertinent evidence of pain.  Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  In

Plummer, the ALJ informed the claimant before the hearing that she would not evaluate the

claimant's psychiatric problems at the hearing and would not take evidence.  Id. at 426. The

claimant assented because contesting would have further delayed her petition.  Id.  Despite not

hearing any evidence, the ALJ found that claimant's psychiatric problem was not supported by

the factual record.  Id. at 432.  The Plummer court remanded, finding that the ALJ's actions

materially impaired plaintiff by preventing her from presenting any evidence.  Id. at 433

("Clearly, the ALJ did not fulfill her duty to explore the claimant's alleged mental impairment.").

14

Here, the plaintiff had ample time to present evidence of his back pain and headaches and chose

not to until the second hearing.  In <u>Plummer</u>, the psychiatric problem was part of the claimant's

initial application, <u>id.</u> at 432, whereas here, plaintiff relies only on the left-eye blindness in his

application and makes no reference to his alleged back or head pain to support his claim for

benefits. (R. 167-76; 181-84.)  It follows that it was proper for the ALJ to reject the plaintiff's

subjective pain as unsupported by underlying medical evidence.  His conclusion is explained and

supported by substantial evidence.

## II.     ALJ's RESIDUAL FUNCTIONAL CAPACITY FINDING WITH  RESPECT TO RETURNING TO PREVIOUS WORK.

The ALJ's rejection of the VE's testimony with respect to the plaintiff's capacity to return

to his work is not supported by substantial evidence.  The ALJ must specify logically consistent

reasons for rejecting expert evidence, by citing evidence in the record.  <u>See</u> <u>Adorno v. Shalala</u>, 40

F.3d 43, 46 (3d Cir. 1994) (remanding where ALJ's opinion stated that the claimant could return

to her job unless she was not exposed to "fumes and heavy dust" on grounds that this was

logically inconsistent with evidence in the record that showed without contradiction that her prior

job exposed her to "fumes and heavy dust."); <u>c.f.</u>, <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir.

1983) ("A single piece of evidence will not satisfy the substantiality test if the Secretary ignores

or fails to resolve a conflict created by countervailing evidence.").  At step four, the ALJ cannot

rely on his own judgment in determining the claimant's non-exertional residual capacity, but

must rely on a vocational expert or other reliable evidence.  <u>Sykes v. Apfel</u>, 238 F.3d 259 (3d

Cir. 2000); <u>see</u> <u>Kent</u>, 710 F.2d at 115 ("[T]he ALJ's conclusion . . . was based solely on . . . his

own amorphous impressions gleaned from the record and from his evaluations of appellant's

credibility . . . In other words, shorn of its rhetoric, the ALJ's conclusion that appellant is capable

of engaging in sedentary activity is merely a function of the ALJ's own judgment."). The ALJ's rejection here of the VE's testimony is at best conclusory and without factual support. He refers to two conclusions gleaned from the record in support of his rejection of the VE's testimony: (1) That plaintiff's vision in the past did not pose a hazard and (2) that plaintiff left his Waste Management position not because of his eye-sight but because of back pain. (R. 14.) These conclusions are simply not consistent with the record.

A.     The ALJ Erred in Concluding That Because Plaintiff Continued Working, The Work was not Hazardous.

First, just because plaintiff continued working does not support a conclusion that the work was not hazardous. The ALJ's determination that plaintiff continued to work because the work was not hazardous is logically invalid. Compare Adorno 40 F.3d at 44 ("Because the findings of fact on which the . . . [ALJ] based its decision are logically inconsistent and contradictory, we will . . . remand for further proceedings."). Indeed a review of the record indicates that plaintiff probably continued to work out of financial necessity as evidenced by his move into a homeless shelter. (R. 40). In addition, plaintiff does not specify why he left the position at Waste Management. If anything, plaintiff suggests that he left precisely because of the safety concerns cited by the VE. As example, plaintiff discusses a specific incident where he got hit by a car because he did not see it as he was jumping off the garbage truck. (R. 33.) Also, in his application for benefits, plaintiff claims he left the Waste Management position because his eye "hurt too much." (R. 168.) There is simply no evidence in the record to support the ALJ's conclusion that plaintiff continued working because the job was not hazardous. Even if such evidence does exist, the ALJ does not address it specifically to overcome a substantial evidence challenge by plaintiff. C.f., Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981)

16

("There are cogent reasons why an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests.  Chief among them is the need for the appellate court to perform its statutory function of judicial review.").

      B.      <u>The ALJ Failed to Comply with the Appeals Council's Remand Order.</u>

The ALJ's analysis with respect to plaintiff's ability to return to his prior job also fails because the ALJ failed to address the Appeals Council's concern that "a finding that the claimant is able to do his past relevant work does not satisfy the requirement that his residual functional capacity be described in terms of specific work limitations and/or capabilities on a "function-by-function basis." (R. 136.)  On remand, the Appeals Council ordered the ALJ, *inter alia*, to perform such an analysis.  (R. 137.)  Contrary to the Appeal's Council instruction, the ALJ's second opinion simply restated his conclusion from the first opinion and added that plaintiff's prior work consisted of both heavy and light unskilled labor, without explaining on a function-by-function basis why the plaintiff would be capable of continuing such performance.  The Social Security Administration has noted that "the. . . [RFCA] must include a narrative discussion describing how evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 1996 WL 374184 at *7 (S.S.A 1996).  The SSA further notes that "the [RFCA] must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . .Only after that may the [RFCA] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." <u>Id.</u> at *1.  No such analysis was conducted.  The Third Circuit has consistently reversed the decision of the ALJ if he does not explain specifically what evidence he relies on to support his finding.  <u>Cotter</u>, 642 F.2d at 704-05 (3d Cir. 1981) (finding that a detailed report of

17

the relied upon evidence is necessary in order for a reviewing court to be capable of performing its function without usurping administrative function); see also Dobrowolksy v. Califano, 606 F2d 403 (3d Cir. 1979); Hargengader v. Califano, 575 F.2d 434 (3d Cir. 1978).

The ALJ writes two paragraphs in an attempt to comply with the remand order. He states that "the remand order directed a reevaluation of the evidence" but proceeds only to discount the report of Dr. El Amir, a determination that has nothing to do with a function-by-function analysis of the plaintiff's residual functional capacity. (R. 13.) He then writes four short sentences:

> Complying further with the remand order, vocational expert testimony was obtained. At the hearing on remand, the vocational expert described the claimant's last work as a garbage person as heavy and unskilled work. The work as a railroad coach cleaner was described as light and unskilled. The work as a truck loader was described as heavy and unskilled.

Id. This does not comply with the remand order as it does not assess the residual functional capacity of the plaintiff at all, let alone on a function-by-function basis. It also fails the standard set out by the SSA in SSR 96-8P, which requires a detailed residual functional capacity analysis before the ALJ can classify the types of work that plaintiff has performed. 1996 WL 374184 at *1. Because he failed to detail specific evidence to support his conclusion, and because he failed to comply with the Appeal's Council's remand order, the ALJ's step four finding was erroneous.

## III.   THE EXISTENCE OF ALTERNATE VIABLE EMPLOYMENT

Apart from his step four analysis, the ALJ determined in the alternative, at step five, that taking into account the plaintiff's age, experience, and residual functional capacity, there is still a significant number of jobs in the national economy that he could perform. Based on that determination, the ALJ determined that plaintiff is not disabled as defined by the Social Security Act. (R. 14-15.) Plaintiff asserts a two pronged challenge to the ALJ's step five finding. First,

18

plaintiff claims he managed to impeach the VE's testimony regarding plaintiff's ability to perform other jobs in the economy during examination.  Second, even if he did not impeach the VE's testimony, plaintiff claims that the number of jobs cited by the VE are not "significant" for purposes of the step five analysis.  In addressing plaintiff's arguments, the Court is mindful that it must not substitute its own judgment for that of the ALJ.  Williams ,970 F.2d at 1182 (citing Early, 743 F.2d at 1007).  This Court must simply review the ALJ's conclusion to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g); Stunkard, 841 F.2d at 59; Doak, 790 F.2d at 28.

    A.      The Plaintiff's Attorney's Questions did not Impeach the VE.

As detailed, supra, Background Section II.D., plaintiff's attorney attempted to impeach the testimony of the VE.  The ALJ rejected these attempts and this conclusion is supported by substantial evidence.  First, plaintiff's attorney, citing the examination of Dr. Ruiz-Blenk, engaged in the following exchange with the VE:

> Q: [Referring to an exhibit] That's Dr. [Ruiz-]Blenk [who finds that plaintiff] is monocular. He can do no tasks that require depth perception and should not do any tasks that require a sustained level of high visual accuracy...You get the depth perception there also, Mr. Meola?
>
> VE A: Correct.
>
> . . .
>
> Q. Well it's hard for me to say what the doctor meant by ["sustained high level of visual accuracy"] but what I layman's terms [sic] which is all I can give you it's that the Claimant cannot keep focus.  Again that's what it means to me.  I don't make any claim that that's – so let me say for the record that I'm interpreting that as meaning cannot sustain a visual focus for any sustained period of time any long period of time. If [sustained high level of visual acuity] means that what is your answer?
>
> A. If he can't focus at all for long periods of time on the task at hand although the jobs I've indicated do not require staring or looking for long periods of time at one

object.  But if he can't even focus on the task at hand then you know in my opinion
he would not be able to do those jobs.

(R. 82-84.)  Plaintiff claims that the ALJ does not successfully refute the assertions made in this

exchange.  (Pl's Br. at  21.)  However, the ALJ determined that the indecisiveness of Dr. Ruiz-

Blenk's findings, which were the basis of the "sustained high level of visual accuracy"

hypothetical posed by the attorney, rendered the VE's response to this question unreliable.

(R.14.)  Implicit in this holding is a finding that the inability to focus, which is what the attorney

concludes "sustained high level of visual accuracy" means, is not supported by the medical

evidence.  This holding was substantiated by the ALJ.  The ALJ noted that the bulk of the

medical evidence suggests that plaintiff suffered from a lack of light perception in the left eye

combined with myopic degeneration in the right eye, which is correctable, and no further

problems.  (R. 106.)  The VE based his testimony, on the RFCA, (R. 78), which is significantly

more reliable than a hypothetical question posed by the plaintiff's attorney based on the

attorney's own interpretation of one of the medical assessments.  The ALJ was within reason to

consider this testimony as more reliable.  This is amply confirmed by the record.  The ALJ's

rejection of this portion of the VE's testimony is supported by substantial evidence.

Second, the plaintiff attaches great significance to the VE's testimony regarding the

plaintiff's peripheral vision limitations.  However, this testimony suggests that the plaintiff can

actually perform the work as opposed to being limited by his physical condition:

Q. Okay. Assume that the Claimant has no peripheral vision. He has no vision at all
in his left eye and no peripheral vision at all in his right eye, would that preclude his
ability to do any of these jobs or have a negative affect in terms of ability to do the
job and the ability to keep pace.  It's a lot of questions but answer any and all of
them.

A. No because you know I think I answered that question the first time around with

the restrictions that were given in 14F by the doctor.  The fact that he had some vision he could look straight ahead.  The jobs are done usually straight ahead. The tasks are done straight ahead.

Q. Um-hum.

A. And really do not require peripheral vision to do the jobs themselves.  If he were on assembly line he may have some problems if something was coming to him if someone was handing him something from his left side where he was blind or handing him something from his right eye.  But in most of these jobs work is usually brought to the station and then taken away from the station by a material handler. So you know that's generally how that work is done but again occasionally some of these jobs are done on an assembly line.  Obviously he would have difficulty in my opinion with lack of peripheral vision.

(R. 86.)  While the ALJ's opinion does not seem to address plaintiff's concerns directly, it is not clear that the VE's testimony does anything but bolster the ALJ's conclusion.  Essentially, the VE noted that while the plaintiff may have some difficulty perceiving materials brought to him from the sides, the bulk of assembly line work is done face on.  The VE concluded that the plaintiff would have no problem with this work.  As such, the ALJ's conclusion that the plaintiff's attorney's questioning of the VE did not impeach the VE is supported by substantial evidence in the record.

      B.      <u>The Number of Jobs Described by the VE is Significant.</u>

The plaintiff next challenges the VE's determination that the number of jobs available to plaintiff in the regional and national economy are "significant."  The VE opines that, in the aggregate, there are 1,500 to 1,800 positions available in Northern New Jersey and 35,000 jobs available nationally, including that of a scaler, assembler, packer, and produce weigher.  (R. 80-81.)  The VE admitted that these estimates cannot be broken down in terms of the individual positions available.  Plaintiff contends that at most there are 300 of each of the individual jobs available and that this is not "significant" with regard to the step five analysis.  However, this

argument is not persuasive.  The ALJ is required to determine only whether the plaintiff can adjust to other work – in general – that must exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(1).  The number of jobs that exist with each specific position and the question of which jobs are available with more frequency has no impact on the ultimate conclusion that there are a significant number of jobs generally available in the economy.

Second, whether 1,300 to 1,500 positions is "significant" is a question for which this court should defer to the ALJ's judgment. Vitatoe v. Barnhart,  No. 01-831, 2003 U.S. Dist. LEXIS 11746, at *23 (D. Del. 2003), aff'd  96 F.App'x 821 (3d Cir. 2004) (deference given to the ALJ's adoption of the VE's assessment with respect to the availability of alternate jobs); see also, Lee v. Sullivan, 988 F.2d 789, 793 (7th Cir. 1993).  It is not unprecedented that the amount of jobs available here – and in some cases even fewer jobs – have been considered "significant" for purposes of step five analysis.  See e.g., Lee, 988 F.2d at 794 (1,400 jobs); Trimiar v. Sullivan, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (850-1,100 jobs).  In addition several district courts in this Circuit have held that a similar number of jobs should be considered "significant." See Vitatoe, 2003 U.S. Dist. LEXIS 11746, at *12 (1000-2000 jobs available regionally are significant);  Durham v. Barnhart, No. 03-140, 2004 U.S. Dist LEXIS 5208, at *6 (D. Del. 2004) (300-520 jobs available regionally are significant).

Again, this Court must keep in mind that its task is to determine whether the ALJ's determination is supported by substantial evidence, not to substitute its judgment for that of the ALJ.  42 U.S.C. §§ 405(g). The VE's testimony as to the availability of jobs and plaintiff's ability to perform such jobs were accepted by the ALJ.  This testimony was not contradicted elsewhere in the record. In fact, there was no other evidence for the ALJ to consider with regard

to the availability of jobs in the economy.  It is reasonable for the ALJ to accept such testimony. The ALJ's conclusion that plaintiff can perform jobs that exist in significant numbers in the national economy is supported by substantial evidence.  The ALJ's step five is affirmed by this Court.

## CONCLUSION

Although the ALJ was in error with respect to his Step Four analysis, this error is harmless in light of the ALJ's alternate step five holding. The ALJ's decision is therefore affirmed.

<u>**s/ William H. Walls, U.S.D.J.**</u>
United States Senior District Judge